**Stanley GIBBS, Plaintiff–Appellant,**

v.

**Dan BOLDEN, et al., Defendants–Appellees.**

No. 02–1560.

United States Court of Appeals, Sixth Circuit.

May 8, 2003.

Before KRUPANSKY, SILER, and GILMAN, Circuit Judges.

## ORDER

This is an appeal from a jury verdict for the defendants in this prisoner civil rights action filed under 42 U.S.C. § 1983. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 1999, Michigan inmate Stanley Gibbs filed a civil rights action against employees of the Michigan Department of Corrections seeking redress for an alleged Eighth Amendment violation committed by the defendants. Gibbs obtained counsel and the case was eventually tried to a jury. The jury found for all defendants.

Gibbs was stabbed five times by another inmate on January 18, 1999, while incarcerated at the Southern Michigan Correctional Facility at Jackson, Michigan ("Jackson"). Gibbs thereafter brought a civil rights action against seven corrections officials and employees based on this assault, and other related complaints, for monetary damages and other relief. The action evolved into a single claim that four corrections employees violated Gibbs's Eighth Amendment rights by ignoring a clear threat to Gibbs's safety prior to the assault. A jury trial commenced against Deborah Mackey (former counselor at Jackson), James Hill (Resident Unit Manager at Jackson), Bruce Curtis (Jackson Warden) and Dan Bolden (Deputy Director of the Michigan Department of Corrections), at which all parties were represented by counsel.

Each counsel conducted an extensive voir dire before the magistrate judge and each had at least one prospective juror removed for cause. All counsel and parties were satisfied with the jury at the conclusion of voir dire and both counsel expressed this satisfaction on the record. The jurors assembled for trial and the district court gave them a preview of the expected issues and procedure. The court expressly warned the jurors that they might not be permitted to have a court reporter re-read portions of testimony to them after the fact.

Gibbs proceeded with his case in chief. Gibbs's theory of recovery was that he personally informed the named defendants, through conversations and in writing, that he had enemies at Jackson and that he should be placed in protective custody and transferred to another prison. The defendants maintained that Gibbs did not specifically request protective custody at Jackson and he never supplied defendants with specific names of his enemies at Jackson.

The evidence consisted of written material as well as the testimony of Gibbs, a fellow inmate and all four defendants. Gibbs testified that he personally spoke with, or sent letters to, all four defendants to tell them that he was in danger from specific individuals and that he wanted protective custody or a transfer. Gibbs supported this with the testimony of another inmate, who claimed to have overheard one of these conversation, and with a copy of a letter to this effect allegedly sent to one of the defendants. A prominent aspect of this case was that Gibbs had a sufficiently high security classification (four on a scale of one to six) that his transfer options were severely limited. Counsel for Gibbs anticipated this and, resultantly, introduced to the jury early in Gibbs's direct testimony the reasons for Gibbs's incarceration (a murder conviction) and for his heightened security classification (a Corrections Department designation of "homosexual predator"). Not one of the defendants confirmed Gibbs's version of these communications and, in fact, each of them emphatically denied ever having received a request for protective custody or information about specific threats directed toward Gibbs.

Following the presentation of Gibbs's case, counsel for Gibbs agreed that any theory of recovery based on a general "unsafe conditions of confinement" claim should be dismissed as absolutely none of the proof placed before the jury supported such a claim. In addition, counsel for Gibbs agreed to strike four plaintiff's exhibits (prior intra-prison communications) as being too remote in time and place to have any relevance to the present cause. The district court charged the jury, hearing no objection from either counsel, and the case was submitted for deliberation.

The jury subsequently sent a request to the district court judge to have the testimony of two different witnesses read back to them. The district court consulted with both counsel who agreed that the request should be denied, considering the absence of the court reporter and in keeping with the court's prior warning to this effect to the jury, and the court relayed this to the jury. The jury returned with a verdict for all defendants and this appeal followed.

■ Gibbs's appellate arguments will be resolved with reference to the specific trial error to which they are addressed. Gibbs's first claimed error is that he, a black man, was prejudiced by the all white jury composition. The Constitutional guarantee of equal protection ensures that a party may not exercise a peremptory challenge to remove an individual on account of that person's race. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This rule has been extended to civil trials. *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 630–31, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). It is critical that a *Batson* challenge, however, must first be raised with the trial court. This is so because the primary defense to pretext based violations of *Batson* is the district court's ability to assess the credibility of an attorney's

proffered justification for the strike of the potential member of the jury. *Hernandez v. New York,* 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In the case at bar, the record shows that neither Gibbs nor his counsel registered any *Batson* challenge to the jury composition. This claim, not raised at trial nor supported by any indication of the jury composition, cannot be considered for the first time on appeal.

■ Gibbs next objects to the district court's admission of evidence that Gibbs was designated as a "homosexual predator" on the Michigan Department of Corrections records. The record plainly reflects, however, that it was a strategic decision of Gibbs's counsel to introduce this information to the jury so as to lessen any negative impact the information may have had if left unexplained. It is well established "that a party may not complain on appeal of errors that he himself invited or provoked the court ... to commit." *Harvis v. Roadway Express, Inc.,* 923 F.2d 59, 60 (6th Cir.1991).

The next two claims are that the court erred in dismissing the theory of recovery on the basis of generally pervasive threatening conditions in Jackson and in striking four of Gibbs's trial exhibits. These arguments must be resolved against Gibbs for the same grounds as the previous issue, namely, that Gibbs's own attorney agreed that the claims directed to a recovery on a theory of pervasively unsafe conditions at Jackson should be dismissed and that the exhibits should not go to the jury.

■ The fifth specific claimed trial error is that the district court erred in refusing to have the testimony of two different witnesses read back to the jury in response to their request. It is within the trial court's discretion whether to grant or deny a jury's request to hear a portion of the trial transcript. *United States v. Thomas,* 875 F.2d 559, 562–563 n. 2 (6th Cir.1989). In

the case at bar, the jury was forewarned that they might not be able to have selected portions of testimony re-read to them. The district court considered the jury's request and decided to act in accordance with the earlier warning, especially in light of the absence of the court reporter, and in complete accord with the wishes of Gibbs's trial counsel. This action cannot be said to have been a mistake under these circumstances.

Finally, Gibbs makes passing references to being prejudiced when the jury saw him wearing leg irons and that his religious beliefs were somehow used against him by the trial court. There is absolutely no support in the record for either of these claims. The appeal lacks merit.

Accordingly, the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.